**No. 24-2861**

IN THE

# United States Court of Appeals

FOR THE THIRD CIRCUIT

→→ ←←

PERRIGO INSTITUTIONAL INVESTOR GROUP, *et al.*,

- v. -

JOSEPH C. PAPA, *et al.*,

On Appeal from the United States District Court
for the District of New Jersey

## JOINT BRIEF FOR DEFENDANTS-APPELLEES
## PERRIGO COMPANY PLC AND JOSEPH C. PAPA

Reed Brodsky
David F. Crowley-Buck
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
212-351-4000

*Attorneys for Defendant-Appellee
  Joseph C. Papa*

James D. Wareham
James E. Anklam
Katherine L. St. Romain
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
202-639-7000

Samuel P. Groner
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York 10004
212-859-8000

*Attorneys for Defendant-Appellee
  Perrigo Company plc*

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and Statement of Financial Interest

No. <u>24-2861</u>

Perrigo Institutional Investor Group, et. al.

v.

Joseph C. Papa, Perrigo Company plc, et. al.

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, **Perrigo Company plc**

makes the following disclosure:                                                                    (Name of Party)

     1) For non-governmental corporate parties please list all parent corporations: None.

     2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None.

     3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

N/A

     4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

**/s/ Katherine L. St. Romain**

(Signature of Counsel or Party)

Dated: 10/22/2024

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................1

COUNTER-STATEMENT OF ISSUES ...................................................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF ARGUMENT .................................................................8

ARGUMENT .............................................................................................9

I.   APPELLANTS DID NOT OPT OUT OF THE CLASS ACTION ....................9

   A. Standard Of Review.......................................................................9

   B. The District Court Properly Rejected The Reasonable Indication
      Approach........................................................................................10

   C. The District Court Acted Within Its Discretion In Determining That,
      Even If This Circuit Recognizes Some Version Of The "Reasonable
      Indication" Approach, Appellants' Conduct Did Not Reasonably
      Indicate An Intent To Opt Out......................................................17

      1.   Filing An Individual Action Before The Opt-Out Period Does Not
          Indicate An Intent To Opt Out. ...............................................19

      2.   Appellants' Attendance At A Status Conference, Negotiation Of A
          Discovery Schedule, And Participation In Depositions During The
          Opt-Out Period Did Not Indicate An Intent To Opt Out. .......22

      3.   Perrigo's Conduct After The Opt-Out Period, And Post-Opt-Out
          Period References To Sculptor's Case Being Among The Opt-Out
          Actions, Have No Bearing On Whether Appellants Opted Out
          During The Opt-Out Period.....................................................25

II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
    FINDING THAT APPELLANTS FAILED TO DEMONSTRATE
    EXCUSABLE NEGLECT................................................................29

   A. Standard Of Review.....................................................................29

   B. The District Court Correctly Applied The *Pioneer* Factors ..........29

      1.   The District Court Did Not Abuse Its Discretion In Determining
          That The First *Pioneer* Factor Slightly Weighs Against Appellants. ......31

      2.   The District Court Did Not Abuse Its Discretion In Determining
          That The Length Of The Delay Strongly Disfavors Appellants. .............34

3.  The District Court Did Not Abuse Its Discretion In Determining
That The Reason For The Delay Strongly Disfavors Appellants. ...........37

4.  The District Court Did Not Give Too Little Weight To The Fourth
*Pioneer* Factor. ........................................................................................41

C.  The District Court's Determination Pursuant To Its Equitable Powers
Not To Grant Appellants Their Requested Relief Was Not An Abuse
Of Discretion ...............................................................................................42

III. THE DISTRICT COURT PROPERLY FOUND THAT THE CLASS
NOTICE COMPORTS WITH DUE PROCESS .................................................43

A.  Standard Of Review....................................................................................43

B.  Appellants Waived Any Due Process Argument ..........................................44

C.  The Class Notice Adequately Apprised Class Members That They
Would Be Bound By Any Judgment In The Class Action Unless They
Opted Out.....................................................................................................47

CONCLUSION ......................................................................................................53

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Advanced Fluid Sys., Inc. v. Huber*,
 958 F.3d 168 (3d Cir. 2020) .........................................................29, 30

*In re Aggrenox Antitrust Litig.*,
 812 F. App'x 26 (2d Cir. May 5, 2020).......................................10, 44

*In re American Classic Voyages Co.*,
 405 F.3d 127 (3d Cir. 2005) .........................................................38, 43

*Aly v. Valeant Pharm. Int'l Inc.*,
 1 F.4th 168 (3d Cir. 2021) .................................................................25

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*,
 300 F.3d 325 (3d Cir. 2002) ...............................................................10

*In re BI-LO, LLC*,
 2010 WL 5128848 (Bankr. D.S.C. July 30, 2010) ............................41

*In re Brand Name Prescription Drugs Antitrust Litig.*,
 171 F.R.D. 213 (N.D. Ill. 1997)....................................................20, 21

*Butler v. Fairbanks Capital*,
 2005 WL 5108537 (D.D.C. Jan. 3, 2005)...........................................20

*In re Caterpillar, Inc., C13 & C15 Engine Product Liability Litig.*,
 2017 WL 2829599 (D.N.J. June 30, 2017)............................16, 35, 36

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014) ............................21, 49

*In re Citizens Bank, N.A.*,
 15 F.4th 607 (3d Cir. 2021) ...............................................10, 15, 16

*In re Deepwater Horizon*,
 819 F.3d 190 (5th Cir. 2016) ................................................9, 10, 13

*Demint v. NationsBank Corp.*,
 208 F.R.D. 639 (M.D. Fla. 2002) .......................................18, 20, 21

*In re Diet Drugs Prods. Liab. Litig.*,
  2009 WL 3444763 (E.D. Pa. Oct. 23, 2009) ......................................................35

*Edwards v. First Am. Corp.*,
  2016 WL 8943464 (C.D. Cal. June 20, 2016) ...................................................49

*Farzan v. Bayview Loan Servicing LLC*,
  2020 WL 13240130 (D.N.J. Dec. 9, 2020) ..................................................40, 41

*Fung v. Wells Fargo Bank*,
  2022 WL 1617659 (D.N.J. May 23, 2022) .........................................................29

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2021 WL 1566053 (S.D.N.Y. Apr. 20, 2021) ....................................................13

*Georgine v. Amchem Prods., Inc.*,
  1995 WL 251402 (E.D. Pa. Apr. 26, 1995) .......................................................30

*Gumbs v. Wilson*,
  2015 WL 1609862 (D.V.I. Apr. 10, 2015) .........................................................41

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2014 WL 348593 (E.D. Pa. Jan. 31, 2014) ...................................................31, 38

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2014 WL 6901120 (E.D. Pa. Dec. 5, 2014) ...................................................16, 21

*In re Insurance Brokerage Antitrust Litig.*,
  2009 WL 2255513 (D.N.J. July 24, 2009) .........................................................36

*Joseph v. Korn*,
  2020 WL 13250482 (E.D.N.Y. Nov. 18, 2020) .................................................35

*In re Kaplan*,
  482 F. App'x 704 (3d Cir. May 24, 2012) ..........................................................38

*Klein v. O'Neal, Inc.*,
  2009 WL 1174638 (N.D. Tex. Apr. 29, 2009) ...................................................26

*In re Linerboard Antitrust Litig.*,
  223 F.R.D. 357 (E.D. Pa. 2004) ........................................................................16

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ............................................................46

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ...............................................................43

*McCubbrey v. Boise Cascade Home & Land Corp.*,
    71 F.R.D. 62 (N.D. Cal. 1976)............................................................20

*In re MedStar ERISA Litig.*,
    2024 WL 4110941 (D. Md. Sept. 5, 2024)..........................................52

*Moolenaar v. Gov't of Virgin Is.*,
    822 F.2d 1342 (3d Cir. 1987) ..............................................................29

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    2019 WL 95917 (E.D. Pa. Jan. 3, 2019).......................................*passim*

*In re Navistar MaxxForce Engines Mtkg., Sales Pracs., & Prods.
    Liab. Litig.*, 990 F.3d 1048 (7th Cir. 2021) ........................................13

*Negrete v. Allianz Life Insurance Co. of North America*,
    2010 WL 4116852 (C.D. Cal. Aug. 18, 2010) .....................50, 51, 52

*Nelson v. AvalonBay Communities, Inc.*,
    2017 WL 6371302 (D.N.J. Dec. 13, 2017)..........................................40

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ...............................................................10

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993).....................................................................*passim*

*In re Processed Egg Prods. Antitrust Litig.*,
    130 F. Supp. 3d 945 (E.D. Pa. 2015).........................................*passim*

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    177 F.R.D. 216 (D.N.J. 1997).............................................................30

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y 1996) .........................................................18

*In re Se. Milk Antitrust Litig.*,
    2012 WL 2050865 (E.D. Tenn. June 6, 2012) .................................................30

*Sharifi v. Township of E. Windsor*,
    2023 WL 8595562 (3d Cir. Dec. 12, 2023) ................................................30

*Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*,
    534 F.3d 469 (5th Cir. 2008) ................................................................44

*Sloan v. Winn Dixie Raleigh, Inc.*,
    25 F. App'x 197 (4th Cir. Jan. 22, 2002) ................................................18

*United States v. Joyce*,
    257 F. App'x. 501 (3d Cir. Dec. 12, 2007) .............................................40

*United States v. Quillen*,
    335 F.3d 219 (3d Cir. 2003) ................................................................9

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    2018 WL 5849466 (D.N.J. Nov. 7, 2018) .........................................24, 25

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................43

*In re WorldCom, Inc. Sec. Litig.*,
    2005 WL 1048073 (S.D.N.Y. May 5, 2005) .....................................30, 38

**Other Authorities:**

Fed. R. Civ. P. 23(c)(2)(B)(v) ................................................................10

6A Fed. Proc., L. Ed. § 12:387 ................................................................52

4 Newberg and Rubenstein on Class Actions § 14:18 (6th ed.) ....................44

6 Newberg and Rubenstein on Class Actions § 18:15 (6th ed.) ....................49

2 McLaughlin on Class Actions § 11:1 (21st ed.) ....................................33

Manual for Complex Litigation (Fourth) § 21.33 (2004) ....................34

# PRELIMINARY STATEMENT[1]

The key issue in this appeal is whether it is within a district court's discretion to reject a request by class members—who had ample knowledge of a class action and were represented by sophisticated legal counsel—to opt out of the classes ***three-and-a-half years after*** the opt-out deadline expired, after the classes and the defendants had negotiated a settlement of the class claims, and after the district court preliminarily approved that settlement. Appellants Sculptor Master Fund, Ltd. and Sculptor Enhanced Master Fund, Ltd. ("Appellants" or "Sculptor") fail to demonstrate that the District Court abused its discretion. The District Court's decision should be affirmed.

In this securities class action, the District Court set a December 3, 2020 deadline for submitting requests for exclusion from the certified classes. The class notice, approved by the District Court and sent to class members, warned that exclusion requests would be ineffective unless made by the deadline and in the prescribed manner.

Appellants did not opt out by the court-ordered deadline or in the prescribed manner. Nor did Appellants seek to opt out late when class counsel (on January 5, 2021) filed on the class action's public docket a list of twenty persons and entities

---

[1]    All citations, internal quotations, and alterations are omitted unless otherwise noted. Emphasis is added in bold italics and alterations are in brackets.

who had requested exclusion from the classes, a list that did not include Appellants. In fact, even when seven *other* plaintiff groups with pending individual actions who were *also* absent from the opt-out list promptly took remedial action to opt out in January 2021, Appellants *still* did not seek to opt out.  In contrast to the diligence exhibited by those seven other plaintiff groups, Appellants did not seek to opt out of the class action until three-and-a-half years after the opt-out deadline and after the parties to the class action reached a settlement that accounted for Appellants' claims.

In July 2024, Appellants moved for an order excluding them from the class settlement, providing a second opportunity to opt out, or enlarging their time to opt out (the "Motion").  Chief Judge Renée Marie Bumb carefully considered and rejected each of Appellants' arguments and acted within her discretion in denying the Motion.  Chief Judge Bumb made factual determinations based on her review of the record to support her decision.  Appellants do not assert that any of these factual findings was clearly erroneous.

For these reasons and those described in more detail below, the District Court's Opinion and Order denying the Motion and ordering that Appellants are members of the certified classes should be affirmed.

## COUNTER-STATEMENT OF ISSUES

1.  Whether the District Court erred in holding that where a court provides clear instructions to class members on how to opt out of a massive, complex class

action, class members must follow those instructions and should not be permitted to argue that they opted out through alternative means that purportedly demonstrated a "reasonable indication" of intent to opt out.

2. In the event that the Court adopts a "reasonable indication" standard, whether the District Court's alternative holding that Appellants did not meet the "reasonable indication" standard was an abuse of discretion.

3. Whether the District Court acted within its discretion in finding that Appellants did not satisfy their burden to demonstrate excusable neglect.

4. Whether Appellants waived their due process argument by failing to file an objection to the proposed judgment in the District Court.

5. Whether the District Court acted within its discretion in determining that the class notice satisfied due process by providing adequate notice of the consequences on separate lawsuits of a failure to opt out.

## STATEMENT OF THE CASE

The securities class action underlying this appeal was filed in the United States District Court for the District of New Jersey in May 2016, with the operative complaint filed in June 2017.  A116, A143.  In November 2018, the lead plaintiff ("Lead Plaintiff") moved for class certification.  A338.  On February 6, 2019, before briefing on the class certification motion was complete (A66–67 [Dkt. Nos. 189,

199]), Appellants filed an individual action against Defendant-Appellee Perrigo Company plc ("Perrigo") and other defendants (A98, A372).

On November 14, 2019, the District Court granted the class certification motion. A667–68. On July 10, 2020, the District Court entered an order approving the notice and summary notice (together, the "Class Notice") to the certified classes and finding that the Class Notice satisfied due process. A669–76 (the "2020 Order"). The 2020 Order required persons who did not wish to be class members to exclude themselves from the classes "*in a timely and proper manner, as hereinafter provided*" and set a ninety-day period for exclusion requests. A673.

The notice administrator began mailing the Class Notice on August 7, 2020. A733 ¶5. The Class Notice set a December 3, 2020 deadline for exclusion requests (A737) and made clear that "[i]f you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion." A681. It also warned that "[i]f you choose to remain in the Class(es), you will be bound by all orders and judgments in this Action, whether favorable or unfavorable." *Id*.

On October 26, 2020, the notice administrator publicly filed an interim update noting that (as of October 19, 2020) there had been only "3 requests for exclusion" (A736 ¶17), none of which were from any plaintiffs who had brought individual actions. *Compare* A740–50, *with* A1210–12.

4

The 2020 Order required class counsel to publicly file an affidavit within thirty days after the opt-out deadline identifying who had requested exclusion from the classes (A674 ¶7), which class counsel did on January 5, 2021 (the "Opt-Out List"). A764. The Opt-Out List identified twenty "persons and entities requesting exclusion from the certified Classes," including twelve entities that had filed individual actions. A764–66. The Opt-Out List *did not* include Appellants. *Id.*

Nine days later (on January 14, 2021), seven additional plaintiff groups with individual actions against Perrigo, but whose names did not appear on the Opt-Out List, made a joint, unopposed motion seeking an order excluding them from the classes or enlarging their time to opt out.[2] The motion explained that their counsel reviewed the Opt-Out List the day it was filed, discovered that their clients' names were not on it, conducted an immediate investigation and determined that their clients' exclusion requests had not been delivered (or, in some cases, mailed), and submitted exclusion requests for their clients two days after the Opt-Out List was filed. A803–05. On January 25, 2021, the Court granted the motion and held that the plaintiff groups in *Carmignac*, *First Manhattan*, *Nationwide*, *Schwab*, *Aberdeen*, *Principal Funds*, and *Kuwait* were "hereby excluded from the certified classes" and that their requests for exclusion were "hereby deemed timely-filed." A898–900.

---

[2]    *See* A786 ("*Carmignac*"); A828 ("*First Manhattan*"); A840 ("*Nationwide*"); A851 ("*Schwab*"); A863 ("*Aberdeen*"); A874 ("*Principal Funds*"); A886 ("*Kuwait*").

More than three years later, on April 5, 2024, Lead Plaintiff filed a motion for preliminary approval of a proposed settlement of the class action (the "Class Settlement") and included a Stipulation and Agreement of Settlement (the "Stipulation"). A93–94 [Dkt. Nos. 423–424]. The Stipulation provided for a payment of $97 million to the classes in exchange for releases of all claims by class members against Perrigo and the other defendants. A1004–05 ¶1(nn),(qq); A1008 ¶5. Because Appellants had not opted out by the court-ordered deadline or sought leave to opt out late, Appellants' shares of Perrigo stock "were accounted for in the Settlement Notice per-share calculations." A1151.

The parties consented that Magistrate Judge Leda Dunn Wettre would conduct all proceedings related to the Class Settlement and would have authority to enter a final order in connection with the Class Settlement. A94 [Dkt. No. 426]. Judge Wettre preliminarily approved the Class Settlement on April 23, 2024 (the "Preliminary Approval Order"). A1077. The Preliminary Approval Order provided that:

> Class Members, having already been provided a full and fair opportunity to timely exclude themselves pursuant to Class Notice and/or notice and motion, as several persons did, shall not be afforded further opportunity to exclude themselves.

A1086 ¶17. The Preliminary Approval Order made clear that "no Class Member or other person shall be heard or entitled to contest the approval of the terms and

conditions of the proposed Settlement or, if approved, the Judgment, or any other order relating thereto, unless that person has served the objection … by **August 6, 2024**" and prescribed the manner in which objections must be served.  A1086–87 ¶18 (emphasis in original).  Judge Wettre set a hearing for September 5, 2024 in connection with final approval of the Class Settlement.  A1078 ¶3.

On July 1, 2024, Appellants submitted a letter to the District Court "seeking leave to file a motion for an order excluding Sculptor from the Class Action settlement, enlarging the time for Sculptor to formally opt out, or providing a second opt-out opportunity."  A1092.  The District Court set a briefing schedule for the Motion and directed that it be addressed to Chief Judge Bumb.  A1101.  Briefing was completed on August 5, 2024.  A1190.

On September 5, 2024, Judge Wettre held the final approval hearing in the class action and entered judgment approving the Class Settlement.  A1262–70.  Judge Wettre explained that "***no objections*** to any aspect of the Settlement [were] made" and determined that the Class Settlement was "in all respects, fair, reasonable, and adequate to the Classes."  A1263–64.  She also determined that the Class Notice that had been distributed to class members in 2020 "fully satisfied … the requirements of due process."  A1265 ¶6.

One week later, on September 12, 2024, Chief Judge Bumb denied the Motion.  A2.  In a well-reasoned, 37-page decision, Chief Judge Bumb addressed and rejected each of Appellants' arguments.  A3–39.  This appeal followed.

## SUMMARY OF ARGUMENT

The District Court acted within its discretion in denying the Motion.

*First*, the Court should reject the "reasonable indication" standard for which Appellants advocate.  As the District Court explained, where, as here, the Class Notice provides clear instructions to class members on how to opt out of a massive class action, courts should not be forced to engage in guesswork to determine whether a class member gave a "reasonable indication" of intent to opt out through alternative means.

*Second*, even if this Court adopts a "reasonable indication" standard, the District Court acted within its discretion in determining that Appellants did not meet such a standard.  Appellants did not perform any act during the opt-out period conveying their intent to opt out.  Merely continuing to maintain a lawsuit filed *before* the opt-out period does not suffice.

*Third*, the District Court acted within its discretion in finding that Appellants did not satisfy their burden to demonstrate excusable neglect because the length of Appellants' delay in bringing the Motion and the reason for that delay strongly disfavor Appellants.  As the District Court found, Appellants' failure to file a timely

8

opt-out request was entirely avoidable and within Appellants' control.  Appellants were sophisticated parties with sophisticated counsel yet they did not have in place any back-up measures to ensure they prepared and mailed the opt-out request, did not check the publicly-filed list of opt-out requests, and did not monitor the dockets of related actions.

*Fourth*, Appellants waived their due process argument by not filing an objection to the proposed judgment (which stated that the Class Notice satisfied the requirements of due process) by the court-ordered deadline.

*Fifth*, the District Court acted within its discretion in determining that the Class Notice satisfied due process.  The Class Notice provided adequate notice of the consequences on separate lawsuits of failing to opt out by providing that if class members did not opt out, they would be bound by all orders and judgments in the class action.[3]

## ARGUMENT

## I. APPELLANTS DID NOT OPT OUT OF THE CLASS ACTION

### A. Standard Of Review

An appellate court reviews a district court's "determination of whether a member of a class action … has opted out" for "abuse of discretion."  *In re*

---

[3]    In the District Court, Appellants also made equitable and judicial estoppel arguments.  A1138–39.  On appeal, Appellants do not challenge the District Court's rejection of those arguments (A36–39) and accordingly those arguments are waived. *See United States v. Quillen*, 335 F.3d 219, 224 (3d Cir. 2003).

*Deepwater Horizon*, 819 F.3d 190, 195 (5th Cir. 2016); *see also* ECF No. 23 ("App.Br.") at 22 ("Courts of Appeal apply the abuse of discretion standard when considering whether the record establishes a party's reasonable indication of its intent to opt out of a class action, asking whether the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."). This Court has recognized that it should "not interfere with the District Court's exercise of discretion unless there is a definite and firm conviction that the court committed a clear error of judgment." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 332 (3d Cir. 2002).

## B. <u>The District Court Properly Rejected The Reasonable Indication Approach</u>

Rule 23(c)(2)(B)(v) of the Federal Rules of Civil Procedure provides that "the court will exclude from the class any member ***who requests exclusion***." Indeed, this Court has recognized that a class member seeking to opt out must "***affirmatively request*** to be excluded." *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021).

The Federal Rules of Civil Procedure do not prescribe any specific method for requesting exclusion, instead leaving the task of fashioning opt-out procedures to the discretion of district courts. *See In re Aggrenox Antitrust Litig.*, 812 F. App'x 26, 29 (2d Cir. May 5, 2020) ("The opt-out procedures approved by the district court fell well within its broad discretion to supervise class actions."); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (district

10

courts have "a wide range of discretion" in managing class actions). Accordingly, as Chief Judge Bumb explained, district courts have "considerable flexibility" to determine "what constitutes an effective expression of a class member's desire to be excluded." A14.

Here, the District Court set precise procedures and a deadline for exclusion requests. A669–76 ¶5. The Class Notice instructed:

> **HOW TO BE EXCLUDED FROM THE CLASSES**: If you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion. Any member of a Class may request not to be bound by these proceedings. To exclude yourself from the Class(es), you must send a signed letter by mail stating that you "request exclusion" from the Class(es) in *Roofer's Pension Fund v. Papa, et al.*, No. 16-CV-2805-MCA-LDW." Be sure to include: (i) your name, address, and telephone number, (ii) the transactional details of the Perrigo common stock you purchased, acquired, sold and/or held during the Class Period, including purchase/sale dates, amount of shares purchased or sold, the price of such purchases or sales, and the number of shares held as of market close on November 12, 2015 at least through 8:00 a.m. eastern time on November 13, 2015; and (iii) the signature of the person or entity requesting exclusion or an authorized representative. Your request for exclusion will not be effective unless it contains all of this information. You must then mail your exclusion request, ***postmarked no later than [90 days after the Postcard is mailed], 2020***, to:
>
> > Perrigo Securities Litigation
> > [Notice admin]

A681–82 (emphasis in original).

Numerous class members followed those procedures and timely requested exclusion. A764–66. Appellants did not. Instead, Appellants ask this Court to find that they opted out by purportedly demonstrating a "reasonable indication" of intent to opt out and to adopt, for the first time, a standard applied by the Second and Tenth Circuits whereby "any reasonable indication of a desire to opt out should suffice." App.Br.23–24.

Chief Judge Bumb declined to adopt a "reasonable indication" approach where, as here, "a court provides clear instructions to class members on how to opt out of a massive, complex class action that a litigant fails to follow" because "courts should not have to engage in guesswork to determine whether the litigant gave a 'reasonable indication' of opting out." A13. Chief Judge Bumb explained that the reasonable indication approach of other circuits is "outdated" and "unworkable because it ignores the complexities of class actions that courts face today." *Id.* The District Court contrasted the bases on which the Second and Tenth Circuits adopted the reasonable indication approach in 1974 and 1982, respectively, with the reasons why other circuits in more recent years have questioned whether this approach makes sense in the context of large, complex class actions with court-approved opt-out procedures. A13–17. Ultimately, the District Court decided to follow the Seventh Circuit's more recent decision, which (i) "pointed to the difficulty courts would face interpreting litigants' conduct in an individual action" if it adopted the

reasonable indication approach, and (ii) concluded that "[f]ollowing mechanical rules is the only sure way to handle suits with thousands of class members."  A16–17 (citing *In re Navistar MaxxForce Engines Mtkg., Sales Pracs., & Prods. Liab. Litig.*, 990 F.3d 1048, 1052–53 (7th Cir. 2021), *cert. denied*, 142 S.Ct. 1107 (2022)).

The District Court's decision to follow the Seventh Circuit's well-reasoned, modern, and mechanical approach was correct.  As the Seventh Circuit explained in *MaxxForce Engines*, the reasonable indication approach "could make class actions difficult if not impossible to administer" because "[c]lasses may have thousands, even millions, of members"; a "clear rule established in something like [a court-approved notice] can be implemented mechanically by a claims administrator," while a "'reasonable indication' approach, by contrast, could pose dozens or hundreds of difficult questions for a judge."  990 F.3d at 1053.  Moreover, "[n]o other circuit has adopted 'reasonable indication' as a legal standard" since the Second Circuit's decision to do so in 1982, *MaxxForce Engines*, 990 F.3d at 1052, and a district court in the Second Circuit has recently noted that "[t]here is considerable force to [*MaxxForce Engines'*] reasoning and ***if the Court were writing on a blank slate it might well adopt the Seventh Circuit's approach***."  *In re Gen. Motors LLC Ignition Switch Litig.*, 2021 WL 1566053, at *5 n.4 (S.D.N.Y. Apr. 20, 2021); *see also Deepwater Horizon*, 819 F.3d at 197–98 ("Given the size and complexity of this MDL proceeding, the court and parties should not have to intuit

an opt out from vague statements made in one of thousands of filings before the court.").

Here, the District Court in its class certification decision noted the "voluminous" size of the classes (A645), which include approximately 300,000 members consisting of everyone who acquired Perrigo common stock during a more than two-year period as well as everyone who held Perrigo shares as of market close on November 12, 2015. A734–35 ¶¶8, 12. A reasonable indication approach would permit any of those class members to use alternative means to demonstrate their desire to opt out rather than following the district court's instructions.

Such an approach "could frustrate efficient administration" of complex class actions by forcing district courts "to wade into the maze of various letters and case management orders (filed years ago) as proof of [a class member's] intent to opt out." A17–18. It could also "complicate settlement efforts." *Id.* Specifically, ambiguity about whether class members may have opted out through alternative means would make it more difficult for parties to agree on a settlement amount that is fair and adequate to compensate class members who remain in the class. It would also make it more difficult for the court to evaluate the settlement; "[m]echanical rules on opt outs help courts to decide whether a proposed settlement is fair and adequate by telling the court who's in and who's out." A18 ("In class actions, accurately calculating initial opt-outs is crucial.").

14

Appellants assert that the District Court's decision was based on the premise that "the many courts that have followed the 'reasonable indication' standard have done so only when a district court has not issued instructions about how to opt out." App.Br.25; *see also* App.Br.26 (similar). That is incorrect. The District Court's decision is ***not*** premised on whether the Second and Tenth Circuits (or any other court) apply the reasonable indication approach only when a district court has not issued opt-out instructions. Rather, the District Court's decision is premised on its observation that "[i]t is hard to quarrel with the Seventh Circuit's sound proposition that the failure to follow the Court's clear instructions will have significant consequences." A17. To the extent that the Second or Tenth Circuits quarrel with that proposition, the District Court disagreed with them in favor of the Seventh Circuit's more compelling analysis.

The approaches of the Second and Tenth Circuits also conflict with this Court's admonition that all individuals falling within the definition of a class will be bound by any judgment in a class action "unless they ***affirmatively request*** to be excluded." *Citizens Bank*, 15 F.4th at 612. By definition, the reasonable indication approach lacks any affirmative request.

Appellants cite four Eastern District of Pennsylvania cases[4] applying the reasonable indication approach prior to this Court's 2021 decision in *Citizens Bank*, but cite no such decisions post-dating *Citizens Bank*. Appellants do not cite any cases from the District of New Jersey applying the reasonable indication approach.[5] Moreover, as this Court has never adopted the reasonable indication approach, Appellants' argument that it would "arguably be unfair to [Appellants] to deviate from that standard here, without clear prior notice," is meritless. App.Br.24.

For these reasons, this Court should not adopt the reasonable indication approach.

---

[4]     App.Br.24 (citing *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945 (E.D. Pa. 2015); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357 (E.D. Pa. 2004); *In re Nat'l Football League Players' Concussion Inj. Litig.* ("*NFL*"), 2019 WL 95917 (E.D. Pa. Jan. 3, 2019); and *In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 6901120 (E.D. Pa. Dec. 5, 2014)).

[5]     Appellants mischaracterize *In re Caterpillar, Inc., C13 & C15 Engine Product Liability Litigation*, 2017 WL 2829599, at *6 (D.N.J. June 30, 2017) as a case where the court purportedly "evaluated contested questions about a party's opt-out status based on whether the litigant provided a 'reasonable indication' of its intention to opt out of a class action." App.Br.24, 29. That case was about excusable neglect; there is no mention of the "reasonable indication" approach. *Caterpillar*, 2017 WL 2829599, at *2–6. The reasons why *Caterpillar* does not support Appellants' excusable neglect arguments are described below. *Infra* Sec. II.B.2.

C. **The District Court Acted Within Its Discretion In Determining That, Even If This Circuit Recognizes Some Version Of The "Reasonable Indication" Approach, Appellants' Conduct Did Not Reasonably Indicate An Intent To Opt Out**

Although Appellants cite the application of the reasonable indication approach in the *NFL* and *Processed Egg* cases (App.Br.24), their conduct fails to satisfy the requirements described in those decisions.

In *NFL*, the district court held that "for a party to give a 'reasonable indication' of its intent to opt out, the party must perform some action that is ***unambiguously inconsistent*** with an intention to participate" in the class and that "[t]his action ***must take place during the opt-out period***." 2019 WL 95917, at *6. "Merely continuing to maintain a lawsuit filed *before* the opt-out period is not a reasonable indication of a desire to opt out." *Id.* at *6–7 (emphasis in original). Similarly, actions taken ***after*** the opt-out period "have no bearing on whether [plaintiff] intended to opt out during the opt-out period." *Id.* at *7. Accordingly, the *NFL* court held that the plaintiff in a separate individual action "did not evince a reasonable indication of her desire to opt out" of the class because "[t]he sole action she took during the opt-out period was continuing to maintain her pending lawsuit" and "[t]he only other actions [she] put[] forth as evidence of her intent to opt out" occurred either before or after the opt-out period. *Id.*

Similarly, in *Processed Egg*, the court **rejected** the plaintiffs' argument that continuing to litigate an individual action during and after the opt-out period

17

"unambiguously demonstrated their intent to opt out … thereby serving as the functional equivalent of opting out." 130 F. Supp. 3d at 949. The court distinguished "the filing of a new lawsuit during the opt-out period," which sometimes might be "sufficient to demonstrate intent to opt out," from "prosecuting an already pending lawsuit during an opt-out period," which is insufficient to demonstrate unambiguous intent to opt out. *Id.* at 953 n.11.

Numerous other courts have held likewise, as the District Court recognized. A19–20 (citing *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) and *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 370 (S.D.N.Y 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996)); *see also Sloan v. Winn Dixie Raleigh, Inc.*, 25 F. App'x 197, 198–99 (4th Cir. Jan. 22, 2002).

Here, Appellants acknowledge that the opt-out period was from August 7, 2020 to December 3, 2020. A1196. Consequently, what Appellants or others did before August 7, 2020 and after December 3, 2020 "have no bearing on whether [Appellants] intended to opt out during the opt-out period." *NFL*, 2019 WL 95917, at *7.

Appellants argue that they satisfied the requirements of the reasonable indication approach in three ways: (1) Appellants supposedly indicated their intent to opt out by filing a separate action in February 2019 (***before*** the opt-out period), "while Lead Plaintiff's motion for class certification was pending"; (2) Appellants

allegedly acted "in conformity with [their] belief that [they] had opted out" by attending a status conference, negotiating a discovery schedule, and attending depositions ***during*** the opt-out period; and (3) the record of events ***after*** the opt-out period purportedly "makes clear that all of these steps did, in fact, communicate Sculptor's intent to pursue individual litigation."  App.Br.27–32.  As described below, the District Court analyzed and properly rejected each of these arguments.

**1.    <u>Filing An Individual Action Before The Opt-Out Period Does Not Indicate An Intent To Opt Out.</u>**

Appellants highlight that their individual action was filed on February 6, 2019, after Lead Plaintiff filed its initial class certification motion papers.  App.Br.8, 27.  However, the date the class certification motion was filed has no bearing on the reasonable indication analysis (and Appellants cite no authority suggesting it does).  The class certification motion was not granted until November 14, 2019 (A667), and it was not until July 10, 2020 that the District Court approved the Class Notice, which led to the August 7, 2020 through December 3, 2020 opt-out period.  A669–76; A732 ¶5.  Any conduct by Appellants in 2019 (or any time before August 7, 2020) cannot support a finding that Appellants opted out.  As the District Court explained, "[Appellants] filed [their] suit before the opt-out period, and merely continued with it throughout and after the opt-out period expired.  That conduct is not a reasonable indication of a desire to opt out."  A20.

In response, Appellants cite *Butler v. Fairbanks Capital* (App.Br.28), but in *Butler*, the plaintiff filed her individual action ***during*** the opt-out period. 2005 WL 5108537, at *1–2, *5 (D.D.C. Jan. 3, 2005) (opt-out period was between February and April 2004; plaintiff filed individual action in March 2004). Similarly, Appellants cite language from *McCubbrey v. Boise Cascade Home & Land Corp.* stating that "[i]nstitution of litigation … constitutes an effective—indeed, strident—expression of a desire not to acquiesce in an impending class settlement" (App.Br.28) but do not mention that, two paragraphs later, the court in *McCubbrey* made clear that the individuals who had instituted the referenced litigation had done so "during the specified period" identified in the class notice. 71 F.R.D. 62, 71–72 (N.D. Cal. 1976). In fact, the *McCubbrey* court titled that entire section of its decision "*Respondents who filed suit **after receipt of the class action notice** but **prior to termination of the exclusion period**.*" *Id.* at 69. Accordingly, the language that Appellants cite from *McCubbrey* does not support their argument that filing their individual action in February 2019, eighteen months ***before*** the opt-out period, reasonably indicated their intent to opt out.

Appellants also cite *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. 213, 216 (N.D. Ill. 1997). App.Br.28. Courts have repeatedly distinguished *Brand Name Prescription* or rejected it as an outlier. As the *Demint* court explained:

> *Brand Name Prescription* is materially distinguishable because the litigant in *Brand Name Prescription* sent an "opt out" notice by overnight mail, albeit to an incorrect address … before the 'opt out' deadline passed. To the extent that *Brand Name Prescription* endorses the theory that pending litigation ***alone*** communicates a litigant's intent to "opt out" of a related class action settlement, *Brand Name Prescription* runs fatally afoul of the preponderant authority.

208 F.R.D. at 641 n.2; *see also* A22–24 (distinguishing *Brand Name Prescription*); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4181732, at \*4, \*5 (N.D. Cal. Aug. 20, 2014) (noting the "weight of authority" that "filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient" to demonstrate intent to opt out and explaining that to the extent the *Brand Name Prescription* court held otherwise, any such decision would be "contrary to the clear weight of authority").  In fact, one of Appellants' own cited cases, *Imprelis* (App.Br.24), limited the application of *Brand Name Prescription* to circumstances (not applicable here) where "an unequivocal opt out letter was sent to the wrong address" and enjoined an individual plaintiff from proceeding with his individual action because his intentions with regard to opting out of the class action "were far from clear."  *In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 6901120 at \*7 (E.D. Pa. Dec. 5, 2014).

21

For these reasons, Appellants' filing of a lawsuit against Perrigo in February 2019 did not reasonably indicate an intent to opt out of the subsequently-certified class.

### 2. Appellants' Attendance At A Status Conference, Negotiation Of A Discovery Schedule, And Participation In Depositions During The Opt-Out Period Did Not Indicate An Intent To Opt Out.

Appellants' second argument (App.Br.28)—that during the opt-out period Appellants reasonably indicated their intent to opt out by attending a status conference (A1207–08 ¶2), negotiating a discovery schedule (A687–89), and attending depositions (A1166 at n.5)—likewise fails. As noted, "for a party to give a 'reasonable indication' of its intent to opt out, the party must perform some action that is ***unambiguously inconsistent*** with an intention to participate" in the class. *NFL*, 2019 WL 95917, at *6. The activities cited by Appellants do not come close to meeting that standard. As the District Court recognized,

> [F]iling a lawsuit creates obligations—initial disclosures, discovery deadlines, case management conferences, dispositive motion deadlines, and so on—that parties must comply with. In large, complex lawsuits, litigants often agree to move those deadlines for many reasons (discovery production delays, ESI discovery, witness availability, expert witnesses need more time, the list can go on). That is the natural progression of many lawsuits and tells this Court little about Sculptor's intent to opt out.

A21; *see also Processed Egg*, 130 F. Supp. 3d at 953 n.11 (similar). The District Court acted within its discretion in determining that Appellants had not taken any

action during the opt-out period that was unambiguously inconsistent with an intent to participate in the classes.

Moreover, Appellants do not point to any document requests, interrogatories, or requests for admission that they served on Perrigo (or any other defendant) or any deposition where they led the questioning. Counsel to **all** individual-action plaintiffs attended the cited status conference and negotiated the cited discovery schedule. A687–92, A1210–12. Thus, even if participation in individual action discovery during the opt-out period were relevant (it is not), Appellants have not identified any material individualized participation.

Appellants' argument about the use of the phrases "opt-out cases" and "Opt-Out Actions" by Judge Wettre and Perrigo's counsel (App.Br.28) fares no better. Appellants specifically cite to an October 15, 2020 status conference involving counsel to all individual-action plaintiffs (including Appellants) where Judge Wettre referred to being "on the record in Roofers' … [a]nd also with all the opt-out actions that are related to the main case." A703. That has no bearing on the reasonable indication analysis. Appellants cannot escape the fact that "*Sculptor* did not perform any act during the opt-out period conveying its intent to opt out," which is the relevant inquiry. A20; *see also NFL*, 2019 WL 95917, at *7 & n.8 (rejecting contention that, by authorizing plaintiff "to appear telephonically at an organizational meeting of all opt-out plaintiffs," the court made "a legal finding that

[plaintiff] had effectively opted out of the Settlement"; plaintiff remained a class member because she "did not evince a reasonable indication of her desire to opt out during the opt-out period."). For the same reason, it makes no difference that an appearance sheet prepared by Perrigo's counsel in advance of the October 15, 2020 status conference listed Appellants' case as one of the "Opt-Out Actions." A1210–11.

In any event, these references to "opt-out cases" and "Opt-Out Actions" were just shorthand, not a representation that any individual plaintiff had opted out. At the time of the October 15, 2020 status conference, neither Judge Wettre nor Perrigo's counsel knew whether any of the individual-action plaintiffs would choose to opt out, as there were still seven weeks remaining before the opt-out deadline. When the notice administrator filed a declaration with an interim update eleven days later, it noted that as of October 19, 2020, there had been only "3 requests for exclusion" from the classes (A736 ¶17), and none of those requests were from any individual-action plaintiffs (*compare* A740–50, *with* A1210–12).

The District Court, in its November 2019 class certification decision, used similar shorthand to refer to one of the other individual actions as "the opt-out action pending before this Court" even though as of November 2019 the opt-out period had not yet begun and none of the individual-action plaintiffs had opted out. A645. Other courts do the same. *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2018 WL

5849466, at *5 (D.N.J. Nov. 7, 2018) (referring to individual actions as "opt-out actions" even though "motion practice for class certification" had not yet occurred); *Aly v. Valeant Pharm. Int'l Inc.*, 1 F.4th 168, 176 (3d Cir. 2021) (referring to a complaint brought by an individual plaintiff before the class action had reached the class certification stage as "an opt-out complaint"). As the District Court explained (A9, A10, A37), it was not until class counsel filed the Opt-Out List in January 2021 that Judge Wettre and Perrigo's counsel learned which individuals and entities had opted out. A764–66; *see also* A766 ¶4 (noting that "twelve of the twenty Exclusion Requests … are from funds that have already filed their own opt out actions").

For these reasons, the District Court did not abuse its discretion in determining that Appellants did not take any action during the opt-out period to reasonably indicate their intent to opt out of the class action.

### 3.    Perrigo's Conduct After The Opt-Out Period, And Post-Opt-Out Period References To Sculptor's Case Being Among The Opt-Out Actions, Have No Bearing On Whether Appellants Opted Out During The Opt-Out Period.

Actions occurring after the conclusion of the opt-out period "have no bearing on whether [a plaintiff] intended to opt out during the opt-out period" because "[w]ithout some action taken ***during*** the opt-out period," conduct after the opt-out period "cannot serve as an after-the-fact indication that [a plaintiff] had intended to opt out" earlier. *NFL*, 2019 WL 95917, at *7; *see also* A20 (where litigation is filed before the opt-out period, "merely continu[ing] with it throughout and after the opt-

out period expired" is "not a reasonable indication of a desire to opt out"). Accordingly, events after the opt-out period are not relevant.

In any event, there is no merit to Appellants' argument that Perrigo "demonstrated [an] understanding that Sculptor had opted out" by taking a deposition of Sculptor's corporate representative after the opt-out period or that the District Court demonstrated such an understanding by including Appellants' lawsuit in scheduling orders entered in connection with all of the individual actions. App.Br.30–31. As the District Court recognized, "filing a lawsuit creates obligations … that parties must comply with." A21. Those obligations include conducting discovery, including depositions. Similarly, part of the "natural progression" of a lawsuit (*id.*) is for the court to issue scheduling orders. The fact that the District Court issued routine scheduling orders (A908–15, A918–24, A927–33, A936–43) and that Perrigo deposed Sculptor's corporate representative "tells this Court little about **Sculptor's intent** to opt out." A21; *see also Processed Egg*, 130 F. Supp. 3d at 953 n.11 (similar).

Moreover, when Perrigo deposed Sculptor's corporate representative, Perrigo could not and did not know whether Appellants would be given a second opportunity to request exclusion from the classes in connection with a potential settlement of the class action. *See Klein v. O'Neal, Inc.*, 2009 WL 1174638, at *2 n.4 (N.D. Tex. Apr. 29, 2009) (a district court "may in its discretion refuse to approve the settlement

26

unless class members are given a second opportunity to request exclusion"). It was only when the Court issued its April 2024 Preliminary Approval Order that the parties learned that there would not be a second opt-out period. A1086 ¶17. During the interim period, Perrigo was entitled to defend itself in connection with the *Sculptor* action—including by deposing Sculptor's corporate representative.

Appellants' argument related to the use of the phrases "opt-out cases" and "opt-out actions" (and similar terminology) by Perrigo and its expert witnesses after the opt-out period (App.Br.29–30) also fails. As discussed above (*supra* Sec. I.C.2), these references were just shorthand, not a representation about whether any individual plaintiff opted out. Moreover, Appellants elide the fact that, other than in a December 7, 2020 letter,[6] Perrigo's court filings did ***not*** refer to Appellants as "opt-out plaintiffs" or to Appellants' lawsuit as an "opt-out action." Rather, in the letters cited by Appellants (App.Br.29–30), the parties referred to the plaintiffs in the individual actions as "Individual Action Plaintiffs" and to their cases as the "Individual Actions." A901–03, A904–07, A916–17, A925–26, A934–35. There is no dispute that Appellants brought an individual action. References to "Individual Action Plaintiffs" (or similar terminology) obviously are not statements about

---

[6]    As to the December 7, 2020 letter, the District Court correctly held that "Perrigo could not have known who affirmatively opted out" at that time "since Class Counsel had not yet filed the Opt-out List required by the 2020 Class Notice Order." A9 at n.5; *see also* A10, 37 (similar); A764–66 (Opt-Out List, filed January 5, 2021).

whether those plaintiffs timely opted out, as is clear from the definitions of those terms in the letters.  A901, A904, A916, A925, A934.

Finally, although a footnote in a report by one of Perrigo's expert witnesses (Professor Guhan Subramanian) mistakenly references Appellants as among "[t]he 19 Opt-Out Plaintiffs … who have opted out" (A1234 at n.21), Appellants' suggestion that there were similar statements in the reports of Perrigo's other expert witnesses is misleading.  App.Br.30.  The pages that Appellants cite from Perrigo's other expert reports include a few instances of the type of shorthand discussed above ("Opt-Out Plaintiffs," "Opt-Out Complaints," and "Opt-Out cases," *see* A1247 at nn.174–75; A1259 at 2) but those reports do not contain any language stating that Appellants opted out.  A mistake in one footnote in one expert's report does not constitute a demonstration of an understanding by Perrigo that Appellants opted out.  And in any event, as the District Court explained, "Perrigo served those reports more than eight months after the opt-out deadline" (A38 at n.8) and, accordingly, they have no bearing on the reasonable indication analysis.

For these reasons, the District Court did not abuse its discretion in determining that Appellants did not satisfy the requirements of the reasonable indication approach.

II.    **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT APPELLANTS FAILED TO DEMONSTRATE EXCUSABLE NEGLECT**

A. **Standard Of Review**

Appellants acknowledge that (i) the District Court's determination that Appellants did not satisfy their burden to demonstrate excusable neglect is reviewed for abuse of discretion, and (ii) this Court should defer to the District Court's factual findings underlying that decision unless they were "clearly erroneous."  App.Br.32–33.

B. **The District Court Correctly Applied The *Pioneer* Factors**

Appellants argue that the District Court abused its discretion by ruling that Appellants' conduct "did not constitute excusable neglect meriting relief through a further opportunity to opt out."   App.Br.20.   But the "circumstances must be exceptional" to justify granting this "extraordinary" form of relief, and such circumstances do not exist here. *Fung v. Wells Fargo Bank*, 2022 WL 1617659, at *3 (D.N.J. May 23, 2022); *see also Moolenaar v. Gov't of Virgin Is.*, 822 F.2d 1342, 1346 (3d Cir. 1987) (similar).

In determining whether a class member has demonstrated excusable neglect, courts balance "the four relevant factors established by the Supreme Court in *Pioneer*," which are "the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether

the movant acted in good faith." *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 182 & n.15 (3d Cir. 2020) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "The burden of establishing excusable neglect is upon the [movant]," here, Appellants. *Sharifi v. Township of E. Windsor*, 2023 WL 8595562, at *2 (3d Cir. Dec. 12, 2023). And even if the movant *can* demonstrate excusable neglect, "it is *still* in the district court's discretion" not to grant the requested extension. *Georgine v. Amchem Prods., Inc.*, 1995 WL 251402, at *4 (E.D. Pa. Apr. 26, 1995); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 237 (D.N.J. 1997).

Moreover, "[t]he Court may treat as effective a tardy election to opt out *only if the delinquency is not substantial or if there is good cause shown*." *In re Se. Milk Antitrust Litig.*, 2012 WL 2050865, at *3 (E.D. Tenn. June 6, 2012). Accordingly, "it is an infrequent occurrence." *Prudential*, 177 F.R.D. at 237; *see also In re WorldCom, Inc. Sec. Litig.*, 2005 WL 1048073, at *6 (S.D.N.Y. May 5, 2005) ("Courts should be particularly chary of extending an opt-out deadline through an application of the doctrine of excusable neglect.").

Here, the District Court did not abuse its discretion in evaluating the *Pioneer* factors, considering the equities, and determining that Appellants had not satisfied their burden to demonstrate excusable neglect.

1. **<u>The District Court Did Not Abuse Its Discretion In Determining That The First *Pioneer* Factor Slightly Weighs Against Appellants.</u>**

The District Court did not abuse its discretion in ruling that "[t]he first *Pioneer* factor—prejudice to Perrigo—slightly weighs against Sculptor." A31–32. In support of that determination, Chief Judge Bumb stressed that "Perrigo has an interest in achieving finality by resolving as many claims against it as possible" and "[t]o facilitate a class action settlement, a defendant must know ahead of time the number of opt outs so it can reach a settlement to resolve as many claims as possible on terms agreeable to all parties." A31–32; *see also In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2014 WL 348593, at *3 (E.D. Pa. Jan. 31, 2014) (first *Pioneer* factor weighed in favor of defendant because "determining ahead of time whether the settlement would resolve most of the potential claims" is "an important part of the defendant's bargain in accepting [a] settlement" and "this bargained-for benefit would be upset by later allowing late opt-outs").

Appellants' arguments to the contrary are meritless. Appellants assert that "[t]he district court incorrectly … credited an interest in 'finality' that is present in every similar case," which Appellants argue "has been repeatedly held insufficient to justify denying a late opt out." App.Br.34. Appellants are misinterpreting the District Court's decision. The District Court distinguished between, on the one hand, "merely having to continue to defend an ongoing lawsuit," which is present in

every similar case and "is not—without more—prejudicial enough to bar a party from opting out of a class action," and, on the other hand, an interest in finality that arises when a defendant enters into a settlement of a securities class action with the assumption that certain shares are included in the settlement and then a class member seeks to opt out late.  A31–33.

Here, Appellants do not challenge the District Court's factual findings that "Sculptor's shares were included in the settlement Lead Counsel reached with Perrigo to resolve the *Roofer's* Class Action."  A33; *see also* A1151 (response by Lead Plaintiff to Appellants' claims) ("Sculptor incorrectly asserts a 'likelihood' that the shares it held for parts of the Class Period were excluded from the average 'per-share' amounts listed in that notice.  Sculptor's assertion is absolutely false.  Its shares were accounted for in the Settlement Notice per-share calculations.").  Certainly, there is no basis to conclude (and Appellants do not argue) that these factual findings by the District Court were clearly erroneous.

These uncontested facts demonstrate that part of Perrigo's bargain in accepting the Class Settlement was the resolution of Appellants' claims.  As the District Court explained, "[b]y agreeing to resolve the *Roofers'* [c]lass action, Perrigo bargained for security and finality to resolve as many claims against it as possible, ***including Sculptor's claims***."  A33.  Permitting Appellants to opt out "at this late stage" would prejudice Perrigo by allowing the classes to keep the benefits

provided by the Class Settlement without providing Perrigo with its bargained-for resolution of Appellants' claims. *Id.*[7]

Appellants also assert that the District Court incorrectly "failed to account for Perrigo's responsibility for the 'prejudice' it now claims to face." App.Br.34. Appellants blame their failure to opt out on Perrigo because "Perrigo never raised Sculptor's opt-out status" with Appellants' former counsel. App.Br.38. This argument fails. ***First***, Perrigo had no independent knowledge about whether Appellants opted out; any information it had on that topic was derived solely from reviewing the publicly-available Opt-Out List (to which Appellants had equal access). A764–66. ***Second***, general principles of class action litigation dictate that defendants should not attempt (or be perceived to be attempting) to induce potential class members either to participate in a class action or to abstain from such participation. *See generally* 2 MCLAUGHLIN ON CLASS ACTIONS § 11:1 (21st ed.) ("Upon a showing that communications from the defendant … may have had the effect of influencing class members to opt out of a certified litigation class, a court may invalidate all opt outs and releases and require a curative notice with a new opt

---

[7]     Appellants also state that "[u]nlike the cases on which the district court relied, Perrigo did not have an option to terminate the settlement here based on the volume of opt-outs that it might have exercised had Sculptor opted out earlier…." App.Br.35. To the extent Appellants are asserting that the Class Settlement lacked a termination option based on the volume of opt-outs, they are mistaken. A1023–24 ¶41.

out period."). ***Third***, after class certification, "the rules governing communications apply as though each class member is a client of the class counsel" and "Defendants' attorneys … may only communicate through class counsel with class members on matters regarding the [class action] litigation." MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.33 (2004). ***Fourth***, practically speaking, Perrigo has never been in a position to monitor the strategic decisions of class members and has not taken on that responsibility.

For these reasons, the District Court did not abuse its discretion in its application of the first *Pioneer* factor.[8]

### 2.   The District Court Did Not Abuse Its Discretion In Determining That The Length Of The Delay Strongly Disfavors Appellants.

The District Court did not abuse its discretion in determining that the second *Pioneer* factor—length of the delay—strongly disfavors Appellants.  A27.  Three-and-a-half years passed between the December 3, 2020 opt-out deadline (A737) and July 1, 2024, when Appellants sought leave to opt out late (A1092).  Chief Judge Bumb accurately characterized that delay as "substantial" and explained that "[c]ourts have routinely found much shorter delays inexcusable."  A31.

---

[8]    Appellants' argument about references to "Opt-Out Plaintiffs" and "Opt-Out Actions" and its related argument about Perrigo engaging in discovery activities in the *Sculptor* action (App.Br.37) fails for the reasons discussed above.  *Supra* Secs. I.C.2 & I.C.3.

Appellants argue that the District Court purportedly did "not capture the relevance of this factor" because it did not distinguish "between the delay that was properly attributed to Sculptor and the delay that resulted from Perrigo's silence." App.Br.38. It is Appellants who do not capture the relevance of this factor. The second *Pioneer* factor examines the length of the delay, not what it "resulted from" (*id.*), which is considered as part of the ***third*** *Pioneer* factor. *Joseph v. Korn*, 2020 WL 13250482, at *1–2 (E.D.N.Y. Nov. 18, 2020) (examining what the delay "resulted from" as part of its analysis of the "reason for the delay" factor), *report and recommendation adopted as modified*, 2021 WL 912163 (E.D.N.Y. Mar. 9, 2021). It certainly was not an abuse of the District Court's discretion to examine the "length of the delay" factor by looking at the length of the delay. *See In re Diet Drugs Prods. Liab. Litig.*, 2009 WL 3444763, at *3 (E.D. Pa. Oct. 23, 2009) (second *Pioneer* factor "weigh[ed] heavily in favor of finding that plaintiff's actions do not constitute excusable neglect" because "[p]laintiff first raised the possibility of exercising an opt-out … more than three years after the [opt-out] period").

In support of their argument, Appellants cite *Caterpillar* (App.Br.40), but, as the District Court explained, "the *Caterpillar* court found the two movant[s'] failure to timely opt out of the MDL was excusable where they each had pending lawsuits against the manufacturer ***in a different state court***, and both asserted ***they were unaware of the settlement of the MDL until after the opt-out period expired***." A34

(citing 2017 WL 2829599, at *2, *6); *see also Caterpillar*, 2017 WL 2829599, at *6 (one movant was completely unaware of the federal litigation and the other movant had "no actual notice of the settlement process" and "was unaware of the proposed class settlement until … a few weeks after the opt-out deadline passed."). In contrast, here, "Sculptor's former counsel ***knew*** of the *Roofer's* Class Action and the 2020 Class Notice Order, … ***intended*** to file the opt-out request," and "was not litigating against Perrigo in a state court across the country" but rather in the same federal court. A34–35; *see also* A391 ¶47 (Appellants "review[ed] … the docket" of the *Roofer's* class action).[9]

Finally, Appellants criticize Chief Judge Bumb for purportedly not considering the delay's "potential effect on judicial proceedings." App.Br.40. However, Chief Judge Bumb ***did*** consider the potential effect on judicial proceedings. Chief Judge Bumb considered that Judge Wettre had already "approved th[e] settlement" of the class action and explained that "[a]llowing Sculptor to opt out at this late stage would jeopardize the security and finality that Perrigo sought to achieve by settling the *Roofers'* Class Action." A33.

---

[9]    In *In re Insurance Brokerage Antitrust Litigation* (App.Br.40), the movant filed a late opt-out request just four months after the deadline. *See* 2009 WL 2255513, at *2–3, *5 (D.N.J. July 24, 2009). Similarly, in *Processed Egg* (App.Br.40), the late opt-out request was filed less than ten months after the deadline. 130 F. Supp. 3d at 955; *see also* A35 ("While the movant's counsel in *Processed Egg* may have misunderstood that settlement notice, Sculptor's former counsel here did not and intended to opt out.").

For these reasons, the District Court did not abuse its discretion in holding that the second *Pioneer* factor strongly disfavors Appellants.

### 3.  The District Court Did Not Abuse Its Discretion In Determining That The Reason For The Delay Strongly Disfavors Appellants.

The District Court did not abuse its discretion in determining that the third *Pioneer* factor—reason for the delay—strongly disfavors Appellants. A27. In support of that determination, Chief Judge Bumb reviewed the facts in the record and found that (i) "Sculptor is a sophisticated party and had retained sophisticated counsel," (ii) "Sculptor's former counsel never filed the opt-out request," (iii) "[e]ven if former counsel's firm's staff mailed the opt-out request … counsel could have easily verified if the Claims Administrator received it by checking the Opt-Out List available on the *Roofer's* Class Action docket" but did not do so, and (iv) "the record does not suggest Sculptor's former counsel had in place any back-up measures to ensure the firm's staff prepared and mailed the opt-out request." A27, 29, 31; *see also* A1144–46 ¶¶7, 12.

There is no basis to conclude (and Appellants do not argue) that any of these factual findings was clearly erroneous. *See* App.Br.41 ("accepting [the District Court's] interpretation of the record"). In light of those factual findings (to which this Court should defer), the District Court did not abuse its discretion in ruling that the third *Pioneer* factor strongly disfavors Appellants because "Sculptor's former

counsel's failure to file the opt-out request was avoidable and within counsel's control," as was Sculptor's former counsel's failure to "verif[y] their client's opt-out status by checking the published opt-out list." A28–29.

In response, Appellants argue that the District Court erred by purportedly treating the fact that Appellants' "failure to ensure that a filing was completed" was "within counsel's control" as outcome-determinative for purposes of the third *Pioneer* factor. App.Br.41. As an initial matter, this Court held in *In re American Classic Voyages Co.* that the third *Pioneer* factor "strongly disfavor[ed]" the movant precisely because, as is the case here, the delay "was entirely avoidable and within [movant]'s control." 405 F.3d 127, 134 (3d Cir. 2005); *see also In re Kaplan*, 482 F. App'x 704, 707 (3d Cir. May 24, 2012) (explaining that "courts often focus on the third factor, and the equities will ***rarely if ever*** favor a party who fails to follow the clear dictates of a court rule" and that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, ***lose*** under the *Pioneer* test.").[10]

---

[10]    Appellants seek to distinguish *Kaplan*, *American Classic Voyages*, and *Imprelis* by arguing that the movant in those cases failed "to determine what the court's rules and procedures required" while here Appellants knew what was required but did not ensure that the required task was completed. App.Br.41–42. However, if anything, it is ***more*** egregious to know a rule and fail to take the "relatively simple steps" of ensuring compliance than to be unaware of the rule altogether. *WorldCom*, 2005 WL 1048073, at *6 (third *Pioneer* factor weighed against movant because "[h]is mistaken belief that he had mailed the Exclusion Form

In any event, the fact that making (or failing to make) a timely opt-out request was within Appellants' (and its counsel's) control was ***not*** the sole reason that the District Court held that the third *Pioneer* factor strongly disfavors Appellants.  The District Court also discussed the fact that, when the Opt-Out List was published in January 2021, Appellants did not check it to see if they were on it.  A29; *see also* A764–66.  The District Court also considered that other individual-action plaintiffs ***did*** timely check the Opt-Out List, that "counsel in some of the separate lawsuits against Perrigo … expeditiously moved to be excluded after the opt-out deadline," and that the motion they filed "should have alerted Sculptor's former counsel to at least check the Opt-out List.  But counsel did not."  A30.

Specifically, the plaintiffs in the *Carmignac*, *First Manhattan*, *Nationwide Mutual*, *Schwab*, *Aberdeen*, *Principal*, and *Kuwait* individual actions made a joint motion on January 14, 2021 (just six weeks after the opt-out deadline and only nine days after the Opt-Out List was published), which was filed on each separate action's docket, seeking to be excluded from the classes.  *See* A786, A828, A840, A851, A863, A874, A887.  The motion was supported by an attorney declaration explaining that their counsel (i) reviewed the Opt-Out List the day it was filed and discovered that their clients' names were not on it; (ii) conducted "an immediate

---

does not excuse his failure to take the relatively simple steps required to effect a mailing and create a reliable record of that mailing.").

investigation and consultation with counsel's clerical staff and the U.S. Postal Service"; and (iii) submitted exclusion requests for their clients two days after the Opt-Out List was published.  A803–05.  On January 25, 2021, the district court granted the motion and held that the seven individual action plaintiff groups were "hereby excluded from the certified classes" and that their requests for exclusion were "hereby deemed timely-filed."  A900.  The diligence of these plaintiffs and their counsel is in sharp contrast to Appellants' "lack of diligence."  A30.

Had Appellants' former counsel monitored the class action docket or the docket in any of these seven related individual actions, this issue might have been resolved in January 2021.  Appellants were well aware of these related individual actions: Appellants' complaint contained repeated citations to the *Carmignac* complaint (A376, 397–403, 506–07 ¶¶61–63, 65 n.15, 69, 73, 252, 254) and Appellants participated in discovery activities in 2019 and 2020 in which all of these individual-action plaintiffs also participated (*e.g.*, A686 ¶9).  *See Nelson v. AvalonBay Communities, Inc.*, 2017 WL 6371302, at *3 (D.N.J. Dec. 13, 2017) (denying motion to opt out and citing *United States v. Joyce*, 257 F. App'x. 501, 505 (3d Cir. Dec. 12, 2007), for the proposition that "it would have been reasonable for counsel to monitor the dockets … where they knew related matters were likely to proceed"); *Farzan v. Bayview Loan Servicing LLC*, 2020 WL 13240130, at *2 (D.N.J. Dec. 9, 2020) (rejecting excusable neglect claim where movant "proffered

[no] explanation for his failure to monitor the court docket"), *aff'd sub nom. In re Farzan*, 2022 WL 1238354 (3d Cir. Apr. 27, 2022); *NFL*, 2019 WL 95917, at *8 n.10 (rejecting excusable neglect claim where plaintiff's "failure to timely opt-out was due to her attorney's failure to monitor the docket").

For these reasons, the District Court did not abuse its discretion in ruling that the third *Pioneer* factor strongly disfavors Appellants.

### 4.    The District Court Did Not Give Too Little Weight To The Fourth *Pioneer* Factor.

The District Court held that "[t]he final *Pioneer* factor"—whether the movant acted in good faith—"weighs in Sculptor's favor." A34.  Appellants argue that the District Court should have given this factor more weight.  App.Br.42–43.  However, inasmuch as it is exceedingly rare for a court to find that "movants acted without good faith[,] … *courts often give little weight to the good faith factor* in an excusable neglect analysis." *In re BI-LO, LLC*, 2010 WL 5128848, at *5 (Bankr. D.S.C. July 30, 2010).  Moreover, "[a] court is afforded wide discretion in weighing the [*Pioneer*] factors." *Gumbs v. Wilson*, 2015 WL 1609862, at *4 (D.V.I. Apr. 10, 2015).

For these reasons, the District Court did not abuse its discretion in its application of the fourth *Pioneer* factor.

## C. **The District Court's Determination Pursuant To Its Equitable Powers Not To Grant Appellants Their Requested Relief Was Not An Abuse Of Discretion**

The District Court properly recognized that the excusable neglect inquiry "requires courts to make an 'equitable' call and 'consider all relevant circumstances surrounding a party's failure to file[]' by the opt-out deadline." A27; *see also Pioneer*, 507 U.S. at 395 ("the determination is at bottom an equitable one"); App.Br.44. "Where those equitable powers are exercised in the form of case management decisions in a complex class action," as is the case here, "a district court's discretion is at its greatest." A27. Here, Chief Judge Bumb did not abuse her discretion in making an equitable decision to deny the Motion.

Appellants argue that Chief Judge Bumb "reached the wrong conclusion" because there had been a possibility, prior to preliminary approval of the Class Settlement, that all class members might have been offered a second chance to opt out at the settlement stage. App.Br.44–45. However, Judge Wettre determined in connection with the preliminary approval motion that "Class Members, having already been provided a full and fair opportunity to timely exclude themselves pursuant to Class Notice and/or notice and motion, as several persons did, shall ***not*** be afforded further opportunity to exclude themselves." A1086 ¶17. In light of that determination by Judge Wettre, it was not "fundamentally inequitable" (App.Br.44)

42

for Chief Judge Bumb to treat Appellants like all other class members and to deny them a further opportunity to exclude themselves.

Ultimately, while all four *Pioneer* factors "must be considered and balanced," the inquiry will often "rely … primarily" on the third factor, the reason for the delay. *American Classic Voyages*, 405 F.3d at 133–34. Here, where that factor and three of the four factors disfavor Appellants (two of them "strongly"), the District Court did not abuse its discretion in determining that "Sculptor has not shown excusable neglect for the Court to allow it, at this late stage of the litigation, to opt out of the *Roofer's* Class Action." A26.

## III.   THE DISTRICT COURT PROPERLY FOUND THAT THE CLASS NOTICE COMPORTS WITH DUE PROCESS

### A. Standard Of Review

As Appellants acknowledge, "[c]ircuit courts are split on the standard applicable when assessing a district court's findings about the adequacy of a class action notice." App.Br.45–46; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007) ("[A] district court's decision regarding the form and content of notices sent to class members is reviewed only for an abuse of discretion."). This Court reviews a district court's decision whether to certify a class or approve a settlement, each of which implicate due process concerns, for abuse of discretion. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). It should do the same here.

In any event, the Court need not decide the standard of review because (i) Appellants waived their due process arguments, and (ii) the Class Notice satisfies due process regardless of the standard of review.

### B. <u>Appellants Waived Any Due Process Argument</u>

Appellants waived any argument that the Class Notice did not satisfy due process by failing to object to the Class Settlement in the prescribed manner by the court-ordered deadline.   Where a district court order preliminarily approving a settlement provides that "[a]ll persons and entities who fail to file an Objection ... shall be deemed to have waived any such objections," individuals who do not file an objection in the prescribed manner by the court-ordered deadline waive their rights to appeal the issue about which they failed to object.  *Aggrenox*, 812 F. App'x at 29; *see also Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 473 (5th Cir. 2008) ("Failure to raise a due process objection in the district court waives that objection on appeal."); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 14:18 (6th ed.) (whereas "objectors to a class action settlement … may pursue an appeal if their objections are denied," "[m]ost circuits … generally hold[] that any issue not objected to below was 'waived' and hence not available on appeal").

Here, the Preliminary Approval Order set a deadline of August 6, 2024 for objections to the Class Settlement and made clear that "***no Class Member or other person shall be heard or entitled to contest*** the approval of the terms and conditions

44

of the proposed Settlement or, if approved, ***the Judgment***, or any other order relating

thereto, unless that person has served the objection" by the court-ordered deadline.

A1086 ¶18.  The District Court set specific guidelines for what must be contained in

an objection.  *Id.*  The Preliminary Approval Order further provided as follows:

> Any Class Member or other person who does not object in
> the manner prescribed above ***shall be deemed to have
> waived all such objections and shall forever be
> foreclosed from making any objection to ... the Judgment
> to be entered approving the Settlement*** ... ; shall be bound
> by all the terms and provisions of the Stipulation and by
> all proceedings, orders, and judgments in the Action; and
> shall also be foreclosed from appealing any judgment or
> order entered in this Action.

A1088 ¶20.

Among the provisions in the "Judgment to be entered" (*id.*) was one stating

that the Class Notice "fully satisfied … the requirements of due process."  A1265

¶6.  Similarly, among the "orders ... in the Action" (A1088 ¶20) as to which all

persons who did not timely object "shall be bound" (*id.*) was the 2020 Order, which

provided that the Class Notice "meet[s] the requirements of … due process."  A670–

71 ¶2.

Prior to the August 6, 2024 deadline for objections, Appellants were aware

that they had not opted out.  For example, on July 1, 2024, Appellants submitted a

letter to the District Court seeking to file the Motion.  A1092.  Appellants were also

aware by that time that the Preliminary Approval Order stated that class members "shall not be afforded further opportunity to exclude themselves." A1086 ¶17.

Accordingly, if Appellants wished to argue that the Class Notice "did not comport with Due Process because it did not warn that class members would be bound by a settlement without a further opportunity to opt out" (App.Br.5), Appellants were required to lodge an objection to the Class Settlement by the deadline. That is precisely what an individual making similar claims did in *Low v. Trump Univ., LLC*, 881 F.3d 1111 (9th Cir. 2018), cited by Appellants (App.Br.45–46). In *Low*, a class member argued that "the long-form class action notice gave her the impression that she would have a second opportunity to opt out of the class if the case settled" in addition to the opportunity that she already had at the class certification stage. 881 F.3d at 1116. Although the Ninth Circuit ultimately did not agree with the merits of her arguments, there was no waiver issue because she filed a timely objection to the class settlement in the district court. *Id.*

Unlike the movant in *Low*, Appellants did not file a timely objection in the District Court. A1263 (noting the lack of any "objections to any aspect of the Settlement"). Consequently, Appellants waived any right to raise such an argument on appeal.[11]

---

[11]    Appellants assert that they "had to give up [their] right to object to the substance of the settlement in order to persuade Class Counsel to waive a deadline in the settlement that barred any class member still pursuing an individual action

C. **The Class Notice Adequately Apprised Class Members That They Would Be Bound By Any Judgment In The Class Action Unless They Opted Out**

Even if not waived, Appellants' due process argument fails on the merits.

Appellants attack the sufficiency of the Class Notice because it purportedly lacked any "warning that a settlement could eliminate their rights to pursue individual litigation." App.Br.48.  As the District Court correctly held, the text of the Class Notice contradicts Appellants' assertion:

> Read together, the Notice's statements are clear: If a person falls within the *Roofer's* Class Action's class definitions, the person is automatically included in the *Roofer's* Class Action, and as a member, the person will be bound by all orders and judgments in that action regardless of the result unless the person requests to be excluded, and if the person wanted to pursue (continue to sue Perrigo), the person had to request exclusion.  Thus, the 2020 Class Notice Order provided enough information to class members to inform them that if they wanted to maintain individual lawsuits against Perrigo, they had to opt out of the *Roofer's* Class Action, otherwise, they would be bound by results of the *Roofer's* Class Action (whether it be settlement or adjudication on the merits).

A25.

---

from receiving settlement proceeds 'unless said direct action is dismissed within thirty (30) days of preliminary approval of the Settlement.'"  App.Br.39 at n.9.  However, Appellants chose ***not*** to submit a claim for their share of the settlement proceeds (A1271), so there was no need for Appellants to give up their right to object.  In any event, it was Appellants' choice to enter into that agreement with class counsel, they knowingly waived their right to object, and they should incur the consequences of that decision.

Specifically, the Class Notice stated, among other things, the following:

- "You will automatically be included in the Class(es) unless you request exclusion in accordance with the procedure set forth [herein]," A680–81;

- "If you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion," A681; *see also* A1150–51 (response by Lead Plaintiff to Appellants' claims) (explaining that the Class Notice "warned Sculptor that it needed to exclude itself or it would be in the Class"); and

- "If you choose to remain in the Class(es), you will be bound by all orders and judgments in this Action, whether favorable or unfavorable," A681; *cf. id.* (stating that "[i]f you choose to be **excluded** from the Class(es)," then, in *that* scenario, "you will **not** be bound by any judgment in this Action" and "you may individually pursue any legal rights that you may have against any of the Defendants").

In addition to the Class Notice itself, the 2020 Order approving the Class Notice made clear that "Class Members shall be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such persons and entities request exclusion from the Class(es) in a timely and proper manner[.]" A673.

Accordingly, class members were on notice that they would be bound by "all orders and judgments in this Action" unless they requested exclusion in accordance with the procedure set out in the Class Notice.  A681.  The words "all orders and judgments" (*id.*) were not limited to orders or judgments in which "Defendants prevail" (App.Br.49) or limited in any other manner; accordingly, they included an

order or judgment approving a settlement. *See Edwards v. First Am. Corp.*, 2016 WL 8943464, at *12 & n.8 (C.D. Cal. June 20, 2016) (in light of language in class notice "expressly stat[ing] that, by remaining in the class, the members agreed to be 'legally bound by court orders and any judgment in this lawsuit,'" there was no need to provide class members with "a second opportunity to opt-out" in connection with the settlement of the lawsuit); 6 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 18:15 (6th ed.) ("The process by which a class action settlement is approved has the effect of turning the private settlement into a judicial ruling, a judgment.").

Moreover, as the District Court recognized, "many plaintiff groups with separate lawsuits against Perrigo (as well as other investors) opted out of the *Roofer's* Class Action, which suggests the 2020 Class Notice Order was adequate." A25; *see* A764–66 ¶¶2–4 (listing the twenty exclusion requests and explaining that twelve of them were "from funds that have already filed their own opt out actions"); *see also Cathode*, 2014 WL 4181732, at *3 ("while the success of the procedures is not dispositive, the fact that eighteen corporate families filed timely opt-out notices further indicates notice was adequate").[12]

---

[12]    Notably, counsel for the other individual-action plaintiffs who did not opt out by the deadline acknowledged that their delay in submitting those exclusion requests was due to delivery issues with the U.S. Postal Service and "a clerical miscommunication" (A791–92)—not any confusion about the requirements of the Class Notice.

Furthermore, "Sculptor's own conduct confirms the Notice was adequate because Sculptor's counsel 'was aware of the Notice and ***intended to request exclusion***.'" A26 (citing A1144 ¶5); *see also id.* ("Sculptor's former counsel did not miss the opt-out deadline because counsel misunderstood the 2020 Class Notice Order."); A1151 (response by Lead Plaintiff to Appellants' motion) ("That Sculptor failed to do what it understood was required has no bearing on the adequacy of the Class Notice."). Appellants' former counsel has never claimed that she or Appellants believed that class members would be provided with a further opportunity to opt out of any proposed settlement. A1143–46. In sum, "Sculptor's assertion that it was uniquely unable to interpret the Class Notice's clear language is implausible, and is belied by its own conduct at the time Class Notice was issued." A1151.

Appellants' arguments to the contrary are meritless. Appellants cite *Negrete v. Allianz Life Insurance Co. of North America*, 2010 WL 4116852, at *10, *12–13 (C.D. Cal. Aug. 18, 2010) for the proposition that a notice containing language that class members would be "legally bound by all of the Orders the Court issues and judgments the Court makes in this class action" was inadequate to bind the absent class members. App.Br.50. Appellants misconstrue *Negrete*'s holding. That litigation involved the impact, if any, of a judgment in a class action in the District of Minnesota (*Mooney*) on a separate class action against the same defendant in the

Central District of California (*Negrete*).  2010 WL 4116852, at *1–2, *4, *7.  The *Mooney* action asserted claims under the Minnesota Prevention of Consumer Fraud Act and for unjust enrichment, while the *Negrete* action asserted RICO claims, California state statutory claims, breach of fiduciary duty and aiding and abetting claims, and claims for unjust enrichment and imposition of constructive trust.  *Id.* at *1–2, *10, *12.  In the *Mooney* action, the court certified a class, granted summary judgment for the defendant Allianz on plaintiffs' unjust enrichment claim, and, following a jury trial, "dismiss[ed] on the merits the claims of all *Mooney* class members who did not opt out of the class."  *Id.* at *2.

Following entry of judgment in *Mooney*, Allianz sought to preclude the class members in *Negrete* from proceeding with their class action because they had not opted out of the *Mooney* class.  *Id.* at *4.  The court rejected that argument and held that the *Mooney* notice was inadequate to bind overlapping class members because the "*Negrete* claims [we]re different from the claims asserted in *Mooney*."  *Id.* at *12.  As the court explained, the *Mooney* notice "only advised that the *Mooney* plaintiffs were purs[u]ing 'legal claims' for 'violation of the Minnesota Protection of Consumer Fraud Act and unjust enrichment,' and thus, ***an absent class member could reasonably conclude that failing to opt out would only bar litigation about these exact 'same legal claims*.'"  *Id.*

51

Here, in contrast, all of the claims brought by Appellants are pursuant to statutory provisions that were also at issue in the class action (namely, Sections 10(b), 14(e) and 20(a) of the Securities Exchange Act of 1934, *compare* A272–276 (first three causes of action in class complaint), *with* A510–523 (causes of action in Appellants' complaint)) and make similar allegations (*compare* A147–155, *with* A377–88). Accordingly, *Negrete* is not relevant.

Appellants' citation to other cases where notices ***satisfied*** due process (App.Br.49, 50) proves nothing. There is no magic language that notices must use. As Appellants acknowledge, the sole inquiry is whether the notice contains "sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." App.Br.46; *see also In re MedStar ERISA Litig.*, 2024 WL 4110941, at *3 (D. Md. Sept. 5, 2024) (notice "need not be perfect" to satisfy due process; all that is required is that it "alert[s] those with adverse viewpoints to investigate"). A notice "need only satisfy broad reasonableness standards imposed by due process"; so long as it "is understandable, the contents of the notice are left to the court's discretion." 6A FED. PROC., L. ED. § 12:387. The Class Notice here easily meets this standard. The District Court did not abuse its discretion in determining that it "fully satisfied … the requirements of due process." A1265 ¶6; *see also* A24–26.

Finally, Appellants argue that "merely stating that those who opt-out can pursue individual claims does not inform the reader that those who do not opt out cannot ever do so, even in the face of a proposed settlement they deem insufficient." App.Br.51.  As an initial matter, the Class Notice did not "merely stat[e]" that those who opt out can pursue individual claims; as discussed above, it also stated that those who do *not* opt out "will be bound by all orders and judgments in this Action, whether favorable or unfavorable."  A681.  But in any event, the "if" clause in the language from the Class Notice cited by Appellants—"*[i]f you choose to be excluded, or in other words, 'opt-out' of the Action*, you may individually pursue any legal rights that you may have against any of the Defendants" (A681)—would be superfluous if a class member *also* was permitted to individually pursue legal rights against the Defendants if the class member *did not* opt out.

For these reasons, to the extent that the Court determines that Appellants have not waived their due process argument, the Court should find that the Class Notice satisfied due process.

## CONCLUSION

Defendants-Appellees respectfully request that the Court affirm the District Court's September 12, 2024 Order denying Appellants' Motion and ordering that Appellants are members of the certified classes in the *Roofer's* Class Action.

Dated:  February 19, 2025

By: *Reed Brodsky*
Reed Brodsky

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky
David F. Crowley-Buck
200 Park Ave
New York, New York 10166
212-351-4000

*Attorneys for Defendant-Appellee*
*Joseph Papa*

Respectfully submitted,

/s/ *James D. Wareham*
James D. Wareham

FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
James D. Wareham
James E. Anklam
Katherine L. St. Romain
801 17th Street, NW
Washington, DC 20006
202-639-7000

Samuel P. Groner
Jason S. Kanterman
One New York Plaza
New York, New York 10004
212-859-8000

*Attorneys for Defendant-Appellee*
*Perrigo Company plc*

# CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to Local Appellate Rule 46.1 that I, James D. Wareham, am a member in good standing of the bar of the Court of Appeals for the Third Circuit.

Dated: February 19, 2025        /s/ *James D. Wareham*
                                     James D. Wareham

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the following statements are true:

1.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced typeface using Microsoft Office Word 2016 in Times New Roman font, type 14 point.

2.      This brief complies with Local Appellate Rule 31.1(c) because the text of the electronic brief is identical to the text in the paper copies and Microsoft Defender Antivirus and McAfee Endpoint Security Version 10.7, virus detection programs, have been run on the file and no virus was detected.

3.      This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,985 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), as calculated using Microsoft Office Word 2016's word count feature.

Dated: February 19, 2025          /s/ *James D. Wareham*
                                   James D. Wareham

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the date indicated below, I filed the foregoing document with

the Clerk of the Court, using the CM/ECF system, which will automatically send

notification and a copy of the brief to counsel who have appeared for the parties and

are CM/ECF participants.


Dated: February 19, 2025              */s/ James D. Wareham*
                                       James D. Wareham